UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

QUEEN NOBLE,  Case No. 1:13-cv-666
    Plaintiff,

                          Spiegel, J.
vs                          Bowman, M.J.

JON HUSTED, et al.,                 **REPORT AND**
    Defendants.                        **RECOMMENDATION**

      Plaintiff, who resides in Cincinnati, Ohio, has filed a *pro se* complaint. (*See* Doc. 1, Complaint). By separate Order issued this date, plaintiff has been granted leave to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915. This matter is before the Court for a *sua sponte* review of the complaint to determine whether the complaint, or any portion of it, should be dismissed because it is frivolous, malicious, fails to state a claim upon which relief may be granted or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B).

      Congress has authorized federal courts to dismiss an *in forma pauperis* complaint if satisfied that the action is frivolous or malicious. *Denton v. Hernandez,* 504 U.S. 25, 31 (1992); *see also* 28 U.S.C. § 1915(e)(2)(B)(i). A complaint may be dismissed as frivolous when the plaintiff cannot make any claim with a rational or arguable basis in fact or law. *Neitzke v. Williams,* 490 U.S. 319, 328-29 (1989); *see also Lawler v. Marshall*, 898 F.2d 1196, 1198 (6th Cir. 1990). An action has no arguable legal basis when the defendant is immune from suit or when plaintiff claims a violation of a legal interest which clearly does not exist. *Neitzke,* 490 U.S. at 327. An action has no arguable factual basis when the allegations are delusional or rise

to the level of the irrational or "wholly incredible." *Denton,* 504 U.S. at 32; *Lawler,* 898 F.2d at 1199. The Court need not accept as true factual allegations that are "fantastic or delusional" in reviewing a complaint for frivolousness. *Hill v. Lappin*, 630 F.3d 468, 471 (6th Cir. 2010) (quoting *Neitzke*, 490 U.S. at 328).

Congress has also authorized the *sua sponte* dismissal of complaints which fail to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915 (e)(2)(B)(ii). Although a plaintiff's *pro se* complaint must be "liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers," the complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Estelle v. Gamble,* 429 U.S. 97, 106 (1976), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citation and quotation omitted)). The complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570); *see also Hill*, 630 F.3d at 470-71 ("dismissal standard articulated in *Iqbal* and *Twombly* governs dismissals for failure to state a claim" under §§ 1915(e)(2)(B)(ii) and 1915A(b)(1)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The Court must accept all well-pleaded factual allegations as true, but need not "accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Although a complaint need not contain "detailed factual allegations," it must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557.

In the caption of the complaint, which is entitled "Notice of Filing and Motion For Preliminary Injunction to Stop the Mayoral Election Proce[e]ding in Cincinnati OH and Defama[t]ion of Character," plaintiff lists the following defendants:  "JON HUSTED, ohio secretary of state; The Hamilton County Boards of Elections, printer Cheryl pollen and Director Amy L. Searcy; the Evanston Recreation Center; Cathy Hughes founder, Radio One, Program Director Jeri Tolliver and DJ Lincoln (winking) Ware WDBZ 1230am the BUZZ, et al." (Doc. 1, Complaint).  In the substance of the complaint, plaintiff often resorts to name calling and racial epithets when referring to the defendants.  Specifically, the complaint contains the following allegations:

> [T]his Complaint names the Secretary of State Jon Husted, members of the Hamilton County Boards of Elections ["nazi"], The Evanston Recreation Center as Defendants and WDBZ The Buzz talk radio station 1230am ["niggas"].  On September 10th, 2013, The Evanston Recreation Center held one of many fraudulent precinct elections that omitted Queen Noble's name off the ballot.  The incumbents John cranley and Roxanne qualls were the only two names on the ballots. . . .  On or about September 10th, 2013 the printing department under nazi Sherry Poland, operations department acted with ill will, malice and wonton intent omitted Queen Noble's name off the Mayoral ballots for voters to pick one in just under 175 of 175 precincts.  Queen Noble got 242 votes counted by nazi Amy L. Searcy, director et al. . . .  Queen Noble demand remedy by court order affidavits from the nazis de facto criminal, unethical, civil and human right violations, further accountable to a host of talk radio niggas defaming Queen Noble's identity, Queenship, history, character and parental rights as follows.  On or about 8/30/13, The nigga of STAR 64 interviewed Mayoral candidate Queen Noble at local 12 WKRC-TV.  At that time Queen Noble showed the nigga a picture of her Mother who de facto was an ordained Queen.  At which the institutionalized colonialized disrespectful nigga replied "Queen of what?"  Queen Noble answered, "Character that even slavery could not steal."  From 8/30/13 to the September 10th, 2013 Mayoral election, a host of the buzz talk show niggas proceeded to disenfranchise, slander Queen Noble's identity, character and candidacy as "Sandra Queen Noble was incapable of leadership and elected office."  On or about 9-17-13, the nigga showed fear on the radio talk show airwaves as seemingly kkk members called in supporting the rights of other callers.  The nigga was so frighten[ed] he could no longer plug a commercial for[]

> Walker Funeral Home without stuttering, totally ruined the commercial and vindicated a lot of callers sickened by the sellout nigga. On or about 9-18-13, at approx 9-25pm, the talk radio nigga told the first caller who mentioned Queen Noble winning the election; to vote[] for the lesser evil mayoral candidates rather than voting for Queen Noble who was no longer on the ballot. . . . At the offset Queen Noble bears the burden of proof of probable causes against agitating Nazis & nigga cohorts de facto aiding and abetting in torts and malicious spite against Queen Noble's perennial beauty, the right to her society, humanity and best interest are all prima facie issues aggravating Queen Noble's rights to closure. Queen Noble demands relief from past ohio elections in 2005 to 2013. Full return of fees, fin[e]s, candidacy reinstatement, actual damages and compensation for nazi and nigga slanderous breach of duty. Employment discrimination under Title VII of the Civil Rights Act of 1964.

(Doc. 1, Complaint).

Plaintiff's allegations are insufficient to state a claim with an arguable basis in law over which this federal Court has subject matter jurisdiction.

First, it appears clear from the face of the complaint that plaintiff is not invoking the diversity jurisdiction of the Court under 28 U.S.C. § 1332(a). Even if she had, the complaint reveals such jurisdiction is lacking. In order for diversity jurisdiction pursuant to § 1332(a) to lie, the citizenship of the plaintiff must be "diverse from the citizenship of each defendant" thereby ensuring "complete diversity." *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996) (citing *State Farm Fire & Cas. Co. v. Tashire*, 386 U.S. 523, 531 (1967)); *see also Napletana v. Hillsdale College*, 385 F.2d 871, 872 (6th Cir. 1967); *Winningham v. North American Res. Corp.*, 809 F. Supp. 546, 551 (S.D. Ohio 1992). In this case, both plaintiff and the named defendants are domiciled in Ohio. Therefore, this Court lacks subject matter jurisdiction on the basis of diversity of citizenship.

District courts also have original federal question jurisdiction over cases "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. In order to invoke the Court's federal question jurisdiction pursuant to 28 U.S.C. § 1331, plaintiff must allege facts showing the cause of action involves an issue of federal law. *See Metro. Life Ins. Co. v. Taylor*,

4

481 U.S. 58, 63 (1987). In this case, the undersigned is unable to discern from the facts alleged in the complaint, any federal statutory or constitutional provision that applies to give rise to an actionable claim for relief.

Plaintiff has stated in the complaint that her cause of action is one of employment discrimination in violation of Title VII of the federal Civil Rights Act. However, it is clear from the face of the complaint that the facts giving rise to plaintiffs' claims against the defendants did not occur in an employment context. Therefore, Title VII is inapplicable to the case-at-hand.

In addition, plaintiff has alleged no facts giving rise to a cognizable claim for relief under 42 U.S.C. § 1983. To state a § 1983 claim, plaintiff must allege (1) the deprivation of a right secured by the Constitution or laws of the United States, and (2) the deprivation was caused by a person acting under color of state law. *See Hines v. Langhenry*, 462 F. A'ppx 500, 503 (6th Cir. 2011) (citing *Boykin v. Van Buren Twp.,* 479 F.3d 444, 451 (6th Cir. 2007); *Tahfs v. Proctor*, 316 F.3d 584, 590 (6th Cir. 2003)).

Plaintiff's cause of action for defamation and slander against the radio station defendants does not rise to the level of a § 1983 claim because (1) the claims involve allegations sounding in tort that are actionable in state court, but do not trigger federal constitutional concerns; and (2) the radio station defendants are private parties, not state actors. "[To] act 'under color of' state law for § 1983 purposes does not require that the defendant be an officer of the State. It is enough that he is a willful participant in joint action with the State or its agents." *Dennis v. Sparks,* 449 U.S. 24, 28 n.4 (1980) (citing *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 152 (1970); *United States v. Price*, 383 U.S. 787, 794 (1966)). However, absent any allegation suggesting the existence of a conspiracy or joint action with state agents, no § 1983 liability can attach to the radio station defendants.

Plaintiff also claims that the remaining defendants are liable for omitting her name from the Cincinnati mayoral ballot that was presented to voters in the primary election held on September 10, 2013. As an initial matter, plaintiff has failed to allege any facts linking defendants Jon Husted and the Evanston Recreation Center to conduct that resulted in her exclusion from the primary ballot. Plaintiff has merely alleged that the Evanston Recreation Center was one of the primary election sites where voters were presented with the ballot containing only the names of mayoral candidates John Cranley and Roxanne Qualls. The allegation is simply insufficient to support the inference that the center played any role in creating the ballot challenged herein. Moreover, plaintiff has not alleged any facts against Ohio's Secretary of State. To the extent plaintiff may argue that defendant Husted is liable in his supervisory capacity for the Hamilton County Board of Elections' alleged misconduct, it is well-settled that the doctrine of *respondeat superior* does not apply in § 1983 lawsuits to impute liability onto supervisory personnel. *See, e.g., Wingo v. Tennessee Dep't of Corr.,* 499 F. App'x 453, 455 (6th Cir. 2012) (per curiam) (citing *Polk Cnty. v. Dodson,* 454 U.S. 312, 325 (1981)). "In order to find supervisory personnel liable, a plaintiff must allege that the supervisors were somehow personally involved in the unconstitutional activity of a subordinate, . . . or at least acquiesced in the alleged unconstitutional activity of a subordinate." *Id.* (citing *Dunn v. Tennessee*, 697 F.2d 121, 128 (6th Cir. 1982), and *Bellamy v. Bradley,* 729 F.2d 416, 421 (6th Cir. 1984). In the instant case, plaintiff has made no such allegation against Husted. Therefore, she has "failed to state a plausible claim" against Ohio's Secretary of State.

To the extent that plaintiff seeks to bring a § 1983 claim against the Hamilton County Board of Elections and two of its employees for failing to include her name as a mayoral candidate in the primary election ballot, plaintiff's allegations are insufficient to implicate federal constitutional concerns. Although the right to vote is considered "a fundamental political

6

right," *Yick Wo v. Hopkins*, 118 U.S. 356, 370 (1886), federal courts are generally not the appropriate forum for handling "the minutia of state election disputes." *Bert v. New York City Bd. of Elections*, No. CV-06-4789 (CPS), 2006 WL 2583741, at *3 (E.D.N.Y. Sept. 7, 2006); *see also Rivera-Powell v. New York City Bd. of Elections*, 470 F.3d 458, 469 & n.16 (2nd Cir. 2006) (Sotomayor, J.) (and Second, First, Eleventh, Ninth and Fourth Circuit cases cited therein) (pointing out that the Second Circuit shared the position of "many other circuits" in holding that "federal court intervention in garden variety election disputes is inappropriate") (internal quotation marks omitted). *Cf. Rossello-Gonzalez v. Calderon-Serra*, 398 F.3d 1, 15-18 (1st Cir. 2004) (ruling that although the federal court had subject matter jurisdiction to consider the § 1983 complaint of a political candidate and a number of his supporters challenging the validity of certain ballots that were cast in a state election, federal intervention in the local election dispute was inappropriate absent a showing that a discrete group of voters had been disenfranchised by the challenged action and/or the lack of a state process to handle the issues posed by the plaintiffs). As the Second Circuit has explained:

> "Principles of federalism limit the power of federal courts to intervene in state elections." *Burton v. Georgia*, 953 F.2d 1266, 1268 (11th Cir. 1992). The Constitution "leaves the conduct of state elections to the states," *Gamza v. Aguirre*, 619 F.2d 449, 453 (5th Cir. 1980), and the Supreme Court has "recognized that the States 'have long been held to have broad powers to determine the conditions under which the right of suffrage may be exercised.'" *Evans* [*v. Cornman*, 398 U.S. 419, 422 (1970)] (quoting *Lassiter v. Northampton Election Bd.*, 360 U.S. 45, 50, 79 S.Ct. 985, 3 L.Ed.2d 1072 (1959)). Because the states traditionally have authority over their own elections and because the Constitution contemplates that authority, courts "have long recognized that not every state election dispute implicates federal constitutional rights." *Burton*, 953 F.2d at 1268. "Only in extraordinary circumstances will a challenge to a state [or local] election rise to the level of a constitutional deprivation." *Curry v. Baker*, 802 F.2d 1302, 1314 (11th Cir. 1986).

*Shannon v. Jacobowitz*, 394 F.3d 90, 94 (2nd Cir. 2005). *Accord Siegel v. LePore*, 234 F.3d 1163, 1181 (11th Cir. 2000) (and cases cited therein) (emphasizing that federal court intervention

in state or local election disputes is not appropriate except in "extraordinary circumstances" rising to the level of a "constitutional deprivation," when "the election process itself reaches the point of patent and fundamental unfairness") (internal citation and quotation marks omitted); *Bennett v. Yoshina*, 140 F.3d 1218, 1226-27 (9th Cir. 1998) (and cases cited therein) (drawing a distinction between cases involving "'garden variety' election irregularities and a pervasive error that undermines the integrity of the vote").

Plaintiff has not alleged any facts to support the inference that the Hamilton County Board of Elections defendants violated any law or otherwise acted improperly in failing to include her name as a mayoral candidate on the primary election ballot. Plaintiff's conclusory assertions that the defendants acted fraudulently and with "ill will" and "malice" do not trigger concerns that the complaint involves anything more than a "garden variety" dispute between plaintiff and the county Board of Elections. *Cf. Bennett*, 140 F.3d at 1226 ("Mere fraud or mistake will not render an election invalid."). In the absence of factual allegations suggesting that plaintiff's omission from the mayoral primary election ballot involved "extraordinary circumstances" rising to the level of a federal constitutional deprivation, plaintiff has failed to state a viable claim for relief under § 1983 against the Hamilton County Board of Elections defendants.

Finally, pendent jurisdiction under 28 U.S.C. § 1367 should not be exercised to consider any state-law claims that are alleged in the complaint because plaintiff has failed to state a federal claim for relief. *See United States Mine Workers v. Gibbs,* 383 U.S. 715 (1966); *see also Brooks v. Rothe*, 577 F.3d 701, 709 (6th Cir. 2009) (quoting *Wojnicz v. Davis*, 80 F. App'x 382, 384-85 (6th Cir. 2003)) ("If the federal claims are all dismissed before trial, the state claims generally should be dismissed as well.").

Accordingly, in sum, the Court concludes that plaintiff's complaint is subject to dismissal

as frivolous under 28 U.S.C. § 1915(e)(2)(B) and for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(h)(3).[1]

**IT IS THEREFORE RECOMMENDED THAT:**

1. The complaint be **DISMISSED** with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B).

2. The Court certify pursuant to 28 U.S.C. § 1915(a)(3) that for the foregoing reasons an appeal of any Order adopting this Report and Recommendation would not be taken in good faith, and therefore, deny plaintiff leave to appeal *in forma pauperis*. *See McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997). Plaintiff remains free, however, to apply to proceed *in forma pauperis* in the Court of Appeals. *See Callihan v. Schneider*, 178 F.3d 800, 803 (6th Cir. 1999), overruling in part *Floyd v. United States Postal Serv.,* 105 F.3d 274, 277 (6th Cir. 1997).

                                                       s/Stephanie K. Bowman
                                                       Stephanie K. Bowman
                                                       United States Magistrate Judge

---

[1] Where there is no basis for federal jurisdiction apparent on the face of the complaint, a court may dismiss the action as frivolous and for lack of subject matter jurisdiction under 28 U.S.C. § 1915(e)(2)(B) and Fed. R. Civ. P. 12(h)(3). *See Carlock v. Williams*, No. 98-5545, 1999 WL 454880, at *2 (6th Cir. June 22, 1999). However, the dismissal is no bar to refiling the suit in state court.

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

QUEEN NOBLE,
    Plaintiff,

vs

JON HUSTED, et al.,
    Defendants.

Case No. 1:13-cv-666

Spiegel, J.
Bowman, M.J.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **within 14 days** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.  This period may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections **within 14 days** after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).

cbc